cal_____

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEOPOLDO C. NAVARRO, ) | Civil No. 04cv2013 J (AJB) |
| ) | |
| Plaintiff, ) | REPORT AND RECOMMENDATION |
| v. ) | |
| ) | |
| VERNON J. BACH, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

  The Plaintiff is an inmate at Calipatria State Prison (Calipatria) proceeding *pro se*. All events referred to in Plaintiff's complaint occurred while Plaintiff was incarcerated at Centinela State Prison (Centinela). The Plaintiff contends that he was wrongly accused, found guilty and punished for his involvement in a prison disturbance during which a correctional officer was assaulted by inmates. The Plaintiff filed a section 1983 civil rights complaint containing eight counts, however, the Defendants subsequently filed a motion to dismiss Plaintiff's complaint in this action, which was granted by this Court as to counts 2 with the exception of MTA Leal, and counts 3, 4, 6, 7 and 8. [Doc. No. 30]. Defendants' motion to dismiss was denied as to counts 1, 2 against MTA Leal and Officer LaCombe, and 5. *Id.* Defendants' did not challenge count 1 of the Plaintiff's complaint alleging excessive force by Officer's Bach and Savala in violation of Plaintiff's Eighth Amendment rights in the motion to dismiss.

The remaining Defendants[1] now move this Court for summary judgment under Rule 56 of the Federal Rules of Civil Procedure with regard to counts 1, 2 and 5 arguing that: 1) Plaintiff's injuries were *de minimis* and are insufficient to establish a cognizable Eighth Amendment claim; 2) Defendants Leal and LaCombe did not act with deliberate indifference to Plaintiff's safety; 3) Defendants did not unconstitutionally deprive the Plaintiff of hygiene items in Administrative Segregation; and 4) Defendants are entitled to qualified immunity, as they reasonably believed that their actions were lawful.

### *Plaintiff's Allegations*

Plaintiff alleges that on July 25, 2003, during the early breakfast for education/vocation students in Facility C at Centinela, an incident occurred in which Correctional Officer Flores was attacked and injured by an inmate. Compl. at 8. Plaintiff claims that as he and other inmates were exiting the dining hall, Officer Gomez stopped Plaintiff and escorted Plaintiff back into the dining hall. Officer Camarillo said to Officer Gomez, "That's him," referring to the Plaintiff. *Id.* Plaintiff states that Officer Gomez then brought him to Officer Savala and explained, "He's the one that hit Flores." *Id.* Plaintiff claims that Sergeant Savala ordered Plaintiff to face the wall and then "slammed [Plaintiff] into the wall" while "pretending" to perform a search and saying, "Oh yeah!" *Id.* Plaintiff was then handcuffed, and Officer Gomez escorted Plaintiff to the medical clinic and placed him in a holding cell. Compl. at 8. At the clinic, Officer Gomez told the other officers that the Plaintiff had "sucker punched" Officer Flores. *Id.*

Plaintiff alleges that soon thereafter, Officers Bach and LaCombe entered the clinic and verbally threatened Plaintiff. Compl. at 9. Plaintiff states that he witnessed Officer Bach and other officers verbally threaten an inmate in another holding cell, take the inmate out of the holding cell, and physically assault that inmate. *Id.* Plaintiff claims that after this incident, Officer Bach further threatened Plaintiff, saying, "You're next mother fucker," "I'm going to fucken (sic) kill you," and "I'm going to break every bone in your body." *Id.* Plaintiff saw Lieutenant Branham in the area and called to him, with the intention of reporting the assaults on Plaintiff and on the other inmate. *Id.* The Plaintiff claims that Lieutenant Branham heard him calling but walked away. *Id.* The Plaintiff states that while

---

[1] The remaining Defendants in this action are Bach, Gervin, Lacombe, Leal, Cabrera, Savala, Mettler, S. Valenzuela, and Salazar. Plaintiff's claims which survived Defendants' motion to dismiss are count 1 as to Officers Savala and Bach, count 2 as to Officer LaComabe and MTA Leal, and count 5 as to Officer Gervin, Sergeant Cabrera, S. Valenzuela, Lieutenant Mettler and Associate Warden Salazar.

he was calling out to Lieutenant Branham, Officer Bach hit the bars of Plaintiff's cell several times and said, "Shut the fuck up" and reached into the cell and grabbed Plaintiff, ripping Plaintiff's jumpsuit. Compl. at 9-10.

Plaintiff states that Officers Bach and LaCombe left, and Medical Technical Assistant (MTA) Leal entered to examine the Plaintiff. *Id.* Plaintiff states that he told MTA Leal about the preceding events and asked MTA Leal not to leave him alone. The Plaintiff contends that MTA Leal responded by saying, "They're not going to do anything." *Id.*

Officers Bach and LaCombe returned while MTA Leal was conducting the examination. The Plaintiff contends that after MTA Leal left, Officer Bach beat him while Officer LaCombe watched. Compl. at 10. Plaintiff claims that while he was handcuffed, he was punched in the stomach and then again in the back of the shoulder by Officer Bach, before falling to the ground in the fetal position. *Id.* Officer Bach verbally challenged the Plaintiff to stand up and "fight like a man." *Id.* Plaintiff stayed down and called to MTA Leal. *Id.* The Plaintiff contends that Defendant Bach said, "Shut the fuck up," punched the Plaintiff's left arm and kicked him in the left upper chest area. *Id.*

When MTA Leal returned to complete the examination, Officer Bach placed Plaintiff in leg restraints. Compl. at 11. After MTA Leal finished the examination and left the room, the Plaintiff told Officer Bach that he intended to file a complaint against Officer Bach, to which Officer Bach replied he intended to write the Plaintiff up and indicate in the report that Plaintiff was "all doped up and instigated the whole shit." *Id.* Officers Bach and LaCombe left, and MTA Leal again returned to the clinic. When Plaintiff told MTA Leal about what had just happened, MTA Leal responded, "It's because an officer was assaulted." *Id.*

Plaintiff later reported these incidents and showed Captain Dexter the bruises he allegedly received as a result of these incidents. Compl. at 11. Plaintiff claims that when he showed the bruises to MTA Leal, she responded, "You already had those," and refused to document the bruises. Compl. at 16. Upon Captain Dexter's orders, the Plaintiff was interviewed by Sergeant Hernandez, and the interview was videotaped by Officer Gomez. Compl. at 11. Plaintiff showed his bruises to Sergeant Hernandez, but Sergeant Hernandez refused to document them, by videotape or otherwise. *Id.* Officer Vela took pictures of the Plaintiff, but also would not photograph or document the bruises. Compl. at 12. Officer

1  LaCombe then arrived to advise Plaintiff of his Miranda rights.  Plaintiff showed his bruises to Officer
2  LaCombe and said, "Look what your buddy Bach did."  Officer LaCombe replied, "He has a lot of free
3  time on his hands." *Id.*  Plaintiff showed his bruises to MTA Ochoa, but MTA Ochoa also refused to
4  document them. *Id.*

5  Plaintiff was transported from the clinic to the Administrative Segregation Unit (ASU).  When
6  the Plaintiff asked Sergeant Valenzuela why he had been placed in ASU, Sergeant Valenzuela told the
7  Plaintiff it was because of Plaintiff's involvement in the incident in the dining hall and the assault on
8  Officer Flores.  Plaintiff further alleges that between July 25, 2003 and August 29, 2003, he was denied
9  allowable personal hygiene products. Compl. at 24-27.

### *Plaintiff's Claims*

11  Plaintiff's claims which survived Defendants' motion to dismiss are count 1 as to Officers
12  Savala and Bach, count 2 as to Officer LaComabe and MTA Leal, and count 5 as to Officer Gervin,
13  Sergeant Cabrera, S. Valenzuela, Lieutenant Mettler and Associate Warden Salazar.  Plaintiff claims in
14  count 1 that Officers Savala and Bach used excessive force against the Plaintiff in violation of the
15  Eighth Amendment.  Compl. at 12.  In count 2, the Plaintiff claims that Officer LaCombe and MTA Leal
16  failed to protect Plaintiff from the alleged excessive force.  Compl. at 17.   The Plaintiff alleges in count
17  5 that Officer Gervin, Sergeant Cabrera, S. Valenzuela, Lieutenant Mettler and Associate Warden
18  Salazar violated his Eighth Amendment rights when they deprived him of personal hygiene products,
19  namely shower shoes, shampoo, deodorant, soap, body lotion, toothpaste, toothbrush and prescription
20  glasses, while he was in administrative segregation from July 25, 2003 to August 29, 2003, a period of
21  thirty-five days.  Compl. at 24-27.

### *Legal Standard*

23  Defendants' move this Court for summary judgment under Rule 56 of the Federal Rules of Civil
24  Procedure.  Under Rule 56, summary judgment shall be granted when there is no genuine issue as to any
25  material fact and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*,
26  477 U.S. 317 (1986).  Rule 56©) states that a party is entitled to summary judgment in his favor "if the
27  pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(e) further provides:

> "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

In *Celotex Corp. v. Catrett*, the United State Supreme Court stated that, "the plain language of Rule 56©) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." 477 U.S. at 322. Where no such showing is made, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof." *Id.*, at 323.

### *Discussion*

Defendants move this Court for summary judgment under Rule 56 of the Federal Rules of Civil Procedure on counts 1, 2 and 5 arguing that: 1) Plaintiff's injuries were *de minimis* and are insufficient to establish a cognizable Eighth Amendment claim; 2) Defendants Leal and LaCombe did not act with deliberate indifference to Plaintiff's safety; 3) Defendants did not unconstitutionally deprive the Plaintiff of hygiene items in Administrative Segregation; and 4) Defendants are entitled to qualified immunity, as they reasonably believed that their actions were lawful.

*I. Plaintiff's Excessive Force Claims Under the Eighth Amendment*

Plaintiff claims in count 1 that Officers Savala and Bach used excessive force against the Plaintiff in violation of the Eighth Amendment. Compl. at 12. Specifically, the Plaintiff claims that Sergeant Savala ordered Plaintiff to face the wall and then "slammed [Plaintiff] into the wall" while "pretending" to perform a search and saying, "Oh yeah!" Compl. at 8. With regard to Defendant Bach, the Plaintiff alleges that while he was handcuffed in a holding cell in the medical clinic, Officer Bach punched him in the stomach, in the back of his shoulder, and his left arm, and kicked him in the upper chest area. Compl. at 10.

In *Hudson*, the Supreme Court enunciated the Eighth Amendment standard holding that " de minimis uses of physical force" are not constitutional violations, however, the Court stated that the focus must be on the amount of force used, not the nature or severity of the injury inflicted.[2] *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992).  Under *Hudson*, an inmate must satisfy both an objective and subjective prong to establish a violation of the Eighth Amendment as it applies to excessive force.  *See Hudson*, 503 U.S. at 7-8.  Under the objective prong, the Court must determine whether or not "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation."  *Id.* at 8.  The Eighth Amendment's prohibitions do not extend to *de minimis* uses of physical force, as long as the physical force used was not such that would qualify as "repugnant to the conscience of mankind."  *Id.* at 10 (citing *Whitley v. Albers*, 475 U.S. 312, 327 (1986)) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  The subjective prong of *Hudson* is satisfied if the Defendant acted with a "sufficiently culpable state of mind."  *Hudson*, 503 U.S. at 8 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).The Ninth Circuit held in , that  *Oliver v. Keller*, 289 F.3d 623, 628 (9th Cir. 2002) (holding that the Eighth Amendment "necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnancy to the conscience of mankind".).

While the Plaintiff contends in his opposition that he suffered numerous bruises and ongoing pain in his left shoulder as a result of the alleged use of excessive force by Officers Savala and Bach, these contentions are contradicted by Plaintiff's sworn statements during his deposition[3] and the medical evidence.[4]  As such, the Court agrees with Defendants' assertion that the injuries suffered by the Plaintiff as set forth in the complaint and moving papers are de minimis in nature.

---

[2] Following the Second, Fifth and Eleventh Circuits, the Ninth Circuit held that the meaning of "physical injury" in § 1997e(e) requires a prior showing of physical injury that need not be significant, but must be more than de minimis.  The Ninth Circuit found that this interpretation reflects Congress's intent in passing the PLRA.  *See*, *United States v. Daas*, 198 F.3d 1167, 1174 (9th Cir.1999) *(*where a statute yields to "more than one reasonable interpretation, we turn to legislative history, looking to the entire statutory scheme."); *see e.g. Harris v. Garner*, 216 F.3d at 977 (analyzing in detail the legislative history behind § 1997e(e) to conclude that the legislation was intended to curtail frivolous prisoner litigation); *Dawes v. Walker*, 239 F.3d 489, 495 (2d Cir.2001) ("Congress intended § 1997e(e) to reduce the burgeoning volume of prisoner litigation in the federal courts.").

[3] *See* Exh. A to Coleman Decl., Plaintiff's Deposition at 37:25 to 38:3; 41:21 to 42:9; 43:16 to 43:23.

[4] *See* Exh. M to Plaintiff's Opposition at 12 (MRI of Plaintiff's left shoulder in July 2006 showing minor degenerative changes without evidence of tear or other traumatic injuries.).

However, under the objective prong set forth in *Hudson*, the Court must also evaluate whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation. *Hudson*, 503 U.S. at 8. While the Eighth Amendment's prohibitions do not typically extend to *de minimis* uses of physical force, such prohibitions would extend to *de minimis* uses of physical force if the physical force used would be "repugnant to the conscience of mankind." *Id.* at 10 (citing *Whitley v. Albers*, 475 U.S. 312, 327 (1986)) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Additionally, *Graham* sets forth a list of factors relevant to the merits of the constitutional excessive force claim, "requir[ing] careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed.

In light of the factors set forth in *Graham*, the Court must evaluate the facts and circumstances surrounding the use of physical force by Officers Savala and Bach to determine whether their respective use of force would be "repugnant to the conscience of mankind." *Id.* Upon review, the Court finds that the physical force employed by Officer Savala was de minimis and not objectively 'harmful enough' to establish a constitutional violation. The Plaintiff admitted that he did not sustain any injuries from Officer Savala's alleged use of force. *See* Exh. A to Coleman Decl., Plaintiff's Deposition at 19:20 to 20:13. Furthermore, the Court finds that the Plaintiff has failed to demonstrate that Officer Savala acted with a "sufficiently culpable state of mind" since Officer Savala's use of force was de minimis and immediately followed another officer's identification of the Plaintiff as a participant in the assault on Officer Flores. *Hudson*, 503 U.S. at 8. Based upon the foregoing, the Court finds that Plaintiff has failed to meet his burden with regard to both the objective and subjective prongs set forth *Hudson*. As such, this Court recommends that Defendants motion for summary judgment as to count 1 with regard to Defendant, Officer Savala, is GRANTED.

With regard to the physical force used by Officer Bach, as alleged by the Plaintiff, the Court finds that Officer Bach's use of force in punching the Plaintiff numerous times and kicking him while he

was handcuffed in a holding cell would qualify as repugnant to the conscience of mankind, particularly in light of the fact the Defendants do not dispute the use of force as described by the Plaintiff. Furthermore, the subjective prong of *Hudson* is satisfied since the Defendant acted with a "sufficiently culpable state of mind", which is evidenced by Officer Bach's repugnant use of force after the Plaintiff had been handcuffed and removed to a medical holding cell, without any evidence of threat or provocation on behalf of the Plaintiff.  *Hudson*, 503 U.S. at 8.  As such, the Court finds that the Defendants' have failed to meet their burden under Rule 56, and therefore recommends that Defendants' motion for summary judgment as to count 1 with regard to Defendant Officer Bach be DENIED.

## II. Plaintiff's Failure to Protect Claims As To Defendants LaCombe and MTA Leal

### A. Failure to Protect Claims Under the Eighth Amendment

Section 1983 provides, in pertinent part, that "(e)very person who, under color of any statute of any state . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. s 1983.  A person "subjects" another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (*citing Sims v. Adams*, 537 F.2d 829 (5th Cir. 1976)).  Moreover, personal participation is not the only predicate for section 1983 liability. Anyone who "causes" any citizen to be subjected to a constitutional deprivation is also liable. *Johnson v. Duffy*, 588 F.2d at 743.  The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others, which the actor knows or reasonably should know, would cause others to inflict the constitutional injury.  *Id.* at 743-44; *cf. Beverly v. Morris*, 470 F.2d 1356 (5th Cir. 1972).

"[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must be both aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837-38;

*Wilson*, 501 U.S. at 302-303.  Thus, the test for "deliberate indifference" contains both objective and subjective components.  The prisoner must show that the official "knew of the risk and that the official inferred that substantial harm might result from the risk." *Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995).

Thus, a prisoner can state a section 1983 claim against prison personnel under the Eighth amendment by establishing that the prison personnel acted with "deliberate indifference" in creating the condition that violates the Eighth Amendment.  *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988); *Berg*, 794 F.2d at 459.  The "deliberate indifference" standard requires proving some degree of "individual culpability," but does not require proof of an express intent to punish.  *Id., citing Haygood v. Younger*, 769 F.2d 1350, 1354-55 (9th Cir. 1985) (en banc), *cert. denied*, 478 U.S. 1020 (1986).  Under an Eighth Amendment failure to protect claim, "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a fact-finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 840-41; *Allen v. Sakai*, 48 F.3d 1082, 1087 (9th Cir. 1994).

### B. "Failure to Protect" as a Due Process Claim Under the Fourteenth Amendment

Prison officials must "take reasonable measures to guarantee the safety of . . . inmates."  *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984).  A convicted prisoner's liberty interests are protected by the due process clause and the state's failure to protect such persons against assaults results in a constitutional violation when that failure constitutes deliberate indifference to their safety.  *Daniels v. Williams*, 474 U.S. 327, 331 (1986);  *Redman v. County of San Diego*, 942 F.2d 1435, 1440 n.7 (9th Cir. 1991), *cert. denied*, 502 U.S. 1074 (1992). The Fourteenth Amendment, like the Eighth Amendment, "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101 (1958).  To this end, the due process clause is not violated so long as the government conduct does not amount to "an unnecessary and wanton infliction of pain" or is not "'repugnant to the conscience of mankind.'" *Redman*, 942 F.2d at 1441, *quoting Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976).

Unlike the "deliberate indifference" required under *Farmer's* Eighth Amendment analysis, however, Ninth Circuit law does not require officials to have a subjective awareness of the risk of harm in order to be deemed "recklessly" or "deliberately" indifferent for purposes of claiming a substantive due process violation. *Neely v. Fienstein*, 50 F.3d 1502, 1508 (9th Cir. 1995); *see, e.g., Wood v. Ostrander*, 851 F.2d 1212, 1214 (9th Cir. 1988), *cert. denied*, 498 U.S. 938 (1990); *Fargo v. City of San Juan Bautista*, 857 F.2d 638, 640 (9th Cir. 1988). However, "if . . . officials know or should know of [an inmate's] particular vulnerability, then the Fourteenth Amendment imposes on them an obligation not to act with reckless indifference to that vulnerability." *Redman*, 942 F.2d at 1443; *Colburn v. Upper Darby Township*, 838 F.2d 663, 669 (3rd Cir. 1988), *cert. denied*, 489 U.S. 1065 (1989).

### *C. Discussion*

Plaintiff contends that Officer LaCombe[5] and MTA Leal failed to protect him from Officer Bach in violation of Plaintiff's Eighth Amendment rights. Compl. at 17. Plaintiff claims that he informed MTA Leal that Officer Bach had verbally threatened him and reached in and pulled him to the front of the cell door with sufficient force to rip his prison jumpsuit. Plaintiff states that he requested that MTA Leal not leave him alone with Officer Bach. Compl. at 10. Plaintiff claims that MTA Leal responded by stating that "[t]hey're not going to do anything." *Id.* Plaintiff alleges that MTA Leal had a conversation with Officer Bach while conducting his medical exam and then left the area. The Plaintiff states that he was then beaten by Officer Bach while Officer La Combe looked on. *Id.* Thereafter, MTA Leal returned to complete the medical exam and after Officers Bach and La Combe left, Plaintiff states that he told MTA Leal what had transpired in her absence and she said "[i]t's because and officer was assaulted." *Id.* Defendants' LaCombe and MTA Leal contend that in order for the Plaintiff to prevail on these claims, the Plaintiff must demonstrate that they actually knew that he faced a substantial risk of serious harm from Officer Bach, that they ignored this risk with deliberate indifference to Plaintiff's safety, and that such disregard caused Plaintiff serious injury. Defendants argue that MTA Leal and LaCombe were not deliberately indifferent to Plaintiff's safety because they did not witness

---

[5] In Defendants' prior motion to dismiss, Defendant, Officer La Combe, denies any wrongdoing, but did not challenge Plaintiff's pleading of an Eighth Amendment failure to protect claim against him. Defendants' Motion to Dismiss at 9.

any use of force and because Plaintiff's injuries, which resulted from Officer Bach's alleged use of excessive force, were *de minimis*. Defendants' Motion for Summary Judgment at 9.

In order to demonstrate that Officer La Combe and MTA Leal acted with deliberate indifference in violation of Plaintiff's rights under the Eighth and Fourteenth Amendments, the Plaintiff must show that Officer LaCombe and MTA Leal knew that Officer Bach posed a serious threat of substantial harm to the Plaintiff and that each of these Defendants either recklessly or deliberately disregarded this risk to the Plaintiff's safety.

### *1. MTA Leal*

The Plaintiff admits during his deposition that MTA Leal did not witness Officer Bach's alleged use of excessive force, as MTA Leal was not present and it is clear from Plaintiff's own statements that MTA Leal believed that Officer Bach's threats were nothing more than threats. *See* Exh. A to Coleman Decl., Plaintiff's Deposition at 37:25 to 38:3; Compl. at 10.  By Plaintiff's own admissions, MTA Leal did not witness anything either before or after the alleged beating by Officer Bach that would support Plaintiff's contention that MTA Leal knew or should have known that the Plaintiff would suffer substantial harm when she momentarily left the Plaintiff with Officer's Bach and LaCombe before returning to complete her examination of the Plaintiff.  *Id.*  In light of the foregoing, the Plaintiff has failed to demonstrate that MTA Leal knew or should have known that the Plaintiff would suffer substantial harm by being left alone with Officer Bach.  As such, the Court finds that the Plaintiff has failed to meet his burden to establish that MTA Leal was recklessly or deliberately indifferent to the substantial risk of harm Plaintiff contends Officer Bach posed to his safety because: 1) MTA Leal's failure to perceive the risk was reasonable and 2) MTA Leal did not leave the Plaintiff alone with Officer Bach.  Based on the foregoing, this Court recommends that Defendants motion for summary judgment as to count 2 with regard to Defendant MTA Leal be GRANTED.

### *2. Officer LaCombe*

Alternatively, the Plaintiff's failure to protect claims with regard to Office LaCombe do demonstrate that Officer LaCombe knew or should have known that Officer Bach posed a substantial risk to Plaintiff's safety.  Defendants do not dispute the use of force by Officer Bach and record indicates that Officer LaCombe was present during Officer Bach's use of force against the Plaintiff in

the holding cell while the Plaintiff was handcuffed.  The Plaintiff contends that Officer LaCombe failed to act to stop Officer Bach and Officer LaCombe does not dispute this contention, but instead states only that he did not witness the use of unnecessary or excessive force by anyone.  Given the undisputed facts as set forth by both the Defendants and the Plaintiff, this Court finds that the Plaintiff has sufficiently established that Officer LaCombe was "recklessly" or "deliberately" indifferent to the unnecessary and wanton infliction of pain" by Officer Bach which is "repugnant to the conscience of mankind." *Redman*, 942 F.2d at 1441, *quoting Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976).

For claims challenging conditions of confinement, the state of mind is deliberate indifference to inmate safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  A prison official may be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement if the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.  Officer LaCombe knew or should have known of the Plaintiff's particular vulnerability being that the Plaintiff was handcuffed and there is no indication from the record that the Plaintiff provoked the use of force by Officer Bach.  As such, the Fourteenth Amendment imposes on Officer LaCombe an obligation not to act with reckless indifference to that vulnerability." *Redman*, 942 F.2d at 1443; *Colburn v. Upper Darby Township*, 838 F.2d 663, 669 (3rd Cir. 1988), *cert. denied*, 489 U.S. 1065 (1989).  Based upon the foregoing, the Court finds that the Defendants' have failed to meet their burden under Rule 56, and therefore recommends that Defendants' motion for summary judgment as to count 1 with regard to Defendant Officer LaCombe be DENIED.

***III. Plaintiff's Eighth Amendment Claims of Depravation of Personal Hygiene Products***

In evaluating an Eighth Amendment claim based on conditions of confinement, a court must look at each alleged condition individually rather than at the totality of conditions. *Id.* at 1246-47.  The alleged denial of adequate hygiene over an extended period of time can state an objectively serious deprivation for the purposes of the Eighth Amendment in certain circumstances.  *E.g., Bradley v. Puckett*, 157 F.3d 1022, 1026 (5th Cir.1998) (denial of disabled prisoner proper facilities to shower for over two months stated claim for cruel and unusual punishment); *Clayton v. Morris*, No. 90 C 2718, 1994 WL 118186, *6 (N.D. Ill. Mar. 28, 1994) ("The denial of shower privileges over a prolonged

period may be actionable if the inmate can allege a specific physical harm that results."), *aff'd*, 70 F.3d 1274 (7th Cir.1995). However, when prisoners are merely inconvenienced or suffer *de minimis* injuries that do not rise to the level of cruel and unusual punishment, the federal courts should not interfere in the day to day operations of the prison. *See, e.g., Hudson v. McMillian*, 503 U.S. 1, 9- 10 (1992) (Eighth Amendment excludes from constitutional recognition de minimis uses of force); *Anderson v. County of Kern*, 45 F.3d 1310, 1314-15 (9th Cir.1995) (temporary placement in safety cell that was dirty and smelled bad did not constitute infliction of pain); *Holloway v. Gunnell*, 685 F.2d 150 (5th Cir.1985) (no claim stated where prisoner was forced to spend two days in a hot dirty cell with no water); *Miles v. Konvalenka*, 791 F.Supp. 212 (N.D.Ill.1992) (single instance of finding mouse in food not actionable); *Evans v. Fogg*, 466 F.Supp. 949 (S.D.N.Y.1979) (no claim stated by prisoner confined for 24 hours in refuse strewn cell and for two days in flooded cell). Federal courts instead should avoid enmeshing themselves in the minutiae of prison operations in the name of the Eighth Amendment. *See Wright v. Rushen*, 642 F.2d 1129, 1132 (9th Cir.1981).

Plaintiff alleges that Officer Gervin, Sergeant Cabrera, S. Valenzuela, Lieutenant Mettler and Associate Warden Salazar violated his Eighth Amendment rights when they deprived him of personal hygiene products, namely shower shoes, shampoo, deodorant, soap, body lotion, toothpaste, toothbrush and prescription glasses, from July 25, 2003 to August 29, 2003, a period of thirty-five days. Compl. at 24-27.[6] When the Plaintiff was placed in ASU, he was issued clothing and linen, hygiene items including soap, toilet paper, tooth powder, and a toothbrush. Branham Decl. ¶¶ 10-14. The Plaintiff acknowledged that he received one 2.5 once bar of soap per week. *See* Exh. A to Coleman Decl., Plaintiff's Deposition at 48:20-24. Plaintiff showered every other day, and took "bird baths" in his cell using the water in his sink. *Id.* at 49:9-15. After the Plaintiff was classified, the Plaintiff was allowed to buy items through the prison canteen. Branham Decl. ¶ 16. Plaintiff received his allowable personal

---

[6] Defendants' note that the Plaintiff's claimed deprivation of personal hygiene items changed several times as the Plaintiff later narrowed his list to shower shoes, shampoo, deodorant, soap and toothpaste and eventually Plaintiff also admitted that he received one-half bar of soap per week. *See* Exh. A to Coleman Decl., Plaintiff's Deposition at 48:20-24. When Plaintiff was asked at his deposition which personal hygiene items he lacked during his placement in the Administrative Segregation Unit ("ASU") from July 25, 2003 until August 29, 2003, he stated that he did not have shampoo or deodorant.

1  property items on August 29, 2003, less than a month after being classified and a month is about average
2  for an inmate in ASU to receive his personal property. Mettler Decl. ¶ 7.

3  Because the Constitution only requires a prison to provide a prisoner with "adequate" hygiene,
4  Defendants did not violate Plaintiff's Eighth Amendment rights with regard to personal hygiene. *See*
5  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The Plaintiff presents no evidence that whatsoever that
6  his conditions were "generally unsanitary" and therefore, the facts as alleged do not support an Eighth
7  Amendment claim. *See Novak v. Beto*, 453 F.2d 661 (5th Cir. 1971) *cert. denied*, 409 U.S. 968 (1972)
8  (holding that conditions in which inmates could only bathe three times per week, and where the inmates
9  received toilet paper, toothbrush, toothpaste and toothbrush were not so unsanitary to rise to the level of
10 an Eighth Amendment violation.) As such, the Court recommends that Defendants motion for summary
11 judgment as to count 5 with regard to Officer Gervin, Sergeant Cabrera, S. Valenzuela, Lieutenant
12 Mettler and Associate Warden Salazar be GRANTED.

13 *IV. Qualified Immunity on Summary Judgment*

14 Government officials enjoy qualified immunity from civil damages unless their conduct violates
15 "clearly established statutory or constitutional rights of which a reasonable person would have known."
16 *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In ruling upon the issue of qualified immunity, the
17 initial inquiry, or first prong, is whether, taken in the light most favorable to the party asserting the
18 injury, the facts alleged show the defendant's conduct violated a constitutional right. *Saucier v. Katz*,
19 533 U.S. 194, 201 (2001). If, and only if, a violation can be made out, the next step, or second prong, is
20 to ask whether the right was clearly established. *Id.* In resolving these issues, the court must view the
21 evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of
22 plaintiff. *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir.2003).

23 The first prong of the qualified immunity inquiry is not at issue here. As set forth above, the
24 Plaintiff's allegations, if true, are sufficient to show that defendants' conduct violated plaintiff's
25 constitutional rights under the Eighth Amendment. As such, the first prong of the inquiry set forth in
26 *Saucier* has been met.

27 As to the second prong, this Court must consider whether the constitutional right was "clearly
28 established." *Saucier*, 533 U.S. at 201. A particularized inquiry must be made, "undertaken in light of

the specific context of the case, not as a broad general proposition ...." *Id.* To determine whether the right was clearly established, the court must determine whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 201-02; *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir.2001). "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier*, 533 U.S. at 202. This is true even if defendants did violate the Plaintiff's Eighth Amendment rights. "Conversely, where 'various courts have agreed that certain conduct is a constitutional violation under facts not distinguishable in a fair way from the facts presented in the case at hand,' the officers would not be entitled to qualified immunity." *Saucier*, 533 U.S. at 202.

The Supreme Court has held that for purposes of qualified immunity, officials can still be on notice that their conduct violates established law even in novel factual circumstances, as notice does not require that facts of previous cases be materially or fundamentally similar to the situation in question. *Hope* 536 U.S. at 741. In fact, the court expressly rejected a requirement that previous cases be "fundamentally similar" and found that "cases with 'materially similar' facts" are not necessary to find that "the law is clearly established." *Id.* That same year, the Ninth Circuit stated that "[N]either Farmer nor subsequent authorities has fleshed out 'at what point a risk of inmate assault becomes sufficiently substantial for Eighth Amendment purposes.' " *Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1051 (9th Cir.2002).

### A. Officer Bach

In this case, there is no doubt that *Graham v. Connor*, clearly establishes the general proposition that the use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness. 490 U.S. 386 (1989). However, the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The relevant, dispositive inquiry in determining whether a right is clearly established, is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Wilson v. Layne*, 526 U.S. 603, 615,

(1999) ("[A]s we explained in *Anderson*, the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established").

Because "officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation," the reasonableness of the officer's belief as to the appropriate level of force should be judged from that on-scene perspective. *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). The Supreme Court cautioned against the "20/20 vision of hindsight" in favor of deference to the judgment of reasonable officers on the scene. *Id.*, at 393, 396. *Graham* sets forth a list of factors relevant to the merits of the constitutional excessive force claim, "requir[ing] careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*, at 396. If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed.

The qualified immunity inquiry, on the other hand, has a further dimension. The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. It is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts, but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.

However, in the instant case, a triable issue of fact was raised, i.e., whether Officer Bach had applied force "maliciously and sadistically to cause harm" in violation of the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *Watts v. McKinney*, 394 F.3d 710 (9th Cir. 2005). Given the circumstances surrounding Officer Bach's use of force as set forth above, this Court cannot find that Officer Bach reasonably or mistakenly believed he was justified in his use of force on the Plaintiff. Officer Bach does not dispute that his use of force occurred well after the initial assault on Officer Flores and while the Plaintiff was restrained and confined in a medical holding cell. As such, the Court

recommends that Defendants' assertion that Officer Bach is entitled to qualified immunity with regard to Plaintiff's excessive force claims set forth in count 1 be DENIED.

### B. Officer LaCombe

Assuming a constitutional violation occurred with regard to the actions of Officer Lacombe in failing to protect the Plaintiff from the use of excessive force by Officer Bach, the Court must now consider whether the constitutional right was "clearly established." *Saucier*, 533 U.S. at 201. An inmate's right to be protected from assault was clearly announced in *Farmer v. Brennan*, 511 U.S. 825 (1994), if not before. The law was clearly established that, if an officer knows of an excessive risk to an inmate's safety and infers from the facts of which he was aware that a substantial risk of harm exists, he would violate the Eighth Amendment by disregarding it or not reasonably responding to it. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In *Reece v. Groose*, the Eighth Circuit described the test for qualified immunity in a failure to protect case stating that "[T]he defendants in this case would have qualified immunity if, in the light of all the facts known at the time, they reasonably believed that they had taken proper measures to protect the plaintiff." 60 F.3d 487, 490 (8th Cir. 1995). In *Reece*, the court found that the defendants were not entitled to summary judgment on the grounds of qualified immunity because the risk to Reece was obvious and there were questions as to whether defendants had done enough to protect him. *Id.*

Plaintiff has produced enough evidence to raise a question of material fact as to whether Officer LaCombe took appropriate steps to protect the Plaintiff given the law at the time of Officer Bach's use of excessive force on the Plaintiff. There is no dispute regarding Officer Bach's use of force or Officer LaCombe presence at the time. Viewing the facts in the light most favorable to Plaintiff, the Court finds that a reasonable officer in Officer LaCombe's shoes, knowing what he knew, could not have mistakenly but reasonably perceived that watching Officer Bach punch and kick the Plaintiff while he was handcuffed, was not unlawful. As such, the Court recommends that Defendants' assertion that Officer Bach is entitled to qualified immunity with regard to Plaintiff's Failure to protect claims set forth in count 2 be DENIED.

///

///

*V. Plaintiff's Requests for Additional Discovery*

The Plaintiff contends that he needs additional discovery in order to obtain responsive evidence. See Plaintiff's Opp. at 21.  While the Plaintiff filed for an extension of time to complete discovery on September 10, 2007, the fact discovery cut-off in this case expired on April 30, 2007, well before the Plaintiff's belated request.  This case was filed in 2004 and as such the Plaintiff had ample time prior to the April 30, 2007 discovery cut-off to conduct discovery or make a timely request.  As such, this Court agrees with Defendants' that the Plaintiff has failed to meet the criteria for additional discovery under Federal Rule of Civil Procedure 56(f)[7] and therefore DENIES Plaintiff's request.

### *Conclusion*

For the reasons set forth above, it is recommended that Defendants motion for summary judgment be GRANTED  as to count 1 with regard to Officer Savala; as to count 2 with regard to MTA Leal; and as to count 5 wither regard to Officer Gervin, Sergeant Cabrera, S. Valenzuela, Lieutenant Mettler and Associate Warden Salazar.  It is recommended that Defendants' motion for summary judgment be DENIED as to count 1 with regard to Officer Bach; and as to count 2 with regard to Officer LaCombe.  Defendants claims of qualified immunity as to Officer Bach and Lacombe are DENIED. Plaintiff's request for additional discovery is DENIED.

This Report and Recommendation will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Any party may file written objections with the Court and serve a copy on all parties on or before August 22, 2008.  Any Reply to the objections shall be filed and served on or before September 5, 2008.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the

//

//

//

---

[7] Federal Rule of Civil Procedure, Rule 56(f) states:
> When Affidavits Are Unavailable. If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order.

Court's Order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

DATED: August 1, 2008

_____
Hon. Anthony J. Battaglia
U.S. Magistrate Judge
United States District Court