1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| LEOPOLDO C. NAVARRO | ) | Civil No. 04cv2013 J (AJB) |
| Plaintiff, | ) | **ORDER:** |
| v. | ) | **1) ADOPTING MAGISTRATE JUDGE BATTAGLIA'S REPORT AND RECOMMENDATION; AND** |
| VERNON J. BACH, et al., | ) | **2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | ) | |

Presently before the Court is Magistrate Judge Anthony J. Battaglia's Report and Recommendation ("R&R") regarding Defendant Vernon J. Bach et al's ("Defendants") Motion for Summary Judgment. [Doc. No. 73.] On October 6, 2004, Plaintiff Leopoldo C. Navarro ("Plaintiff"), a state prisoner proceeding *pro se* and *in forma pauperis*, filed a Complaint with this Court alleging that prison officials violated his civil rights pursuant to 42 U.S.C. § 1983. [Doc. No. 1.] Plaintiff's Complaint contained eight counts, but Defendants subsequently filed a Motion to Dismiss [doc. no. 30], which this Court granted as to count 2 with the exception of Defendants Leal and LaCombe, and as to counts 3, 4, 6, 7, and 8. [Doc. No. 47.] This Court denied Defendants' Motion to Dismiss as to count 2 against Defendant Leal and count 5. [Doc.

1   No. 47.]  Defendants did not challenge count 1 of Plaintiff's Complaint alleging excessive force

2   by Officers Bach and Savala in violation of Plaintiff's Eighth Amendment rights in the Motion

3   to Dismiss.  The remaining Defendants now move this Court for summary judgment under Rule

4   56 of the Federal Rules of Civil Procedure with regard to counts 1, 2 and 5.  [Doc. No. 55.]

5   Plaintiff has filed an Opposition, and Defendants have filed a Reply.  [Doc. Nos. 66, 67.]

6   Magistrate Judge Anthony J. Battaglia has filed a Report and Recommendation ("R&R")

7   advising the Court to grant Defendants' Motion for Summary Judgment as to count 1 with

8   regard to Officer Savala; as to count 2 with regard to MTA Leal; and as to count 5 with regard to

9   Officer Gervin, Sergeant Cabrera, S. Valenzuela, Lieutenant Mettler, and Associate Warden

10  Salazar.  [Doc. No. 73.]  The R&R also advises this court to deny Defendants' Motion for

11  Summary Judgment as to count 1 with regard to Officer Bach and as to count 2 with regard to

12  Officer LaCombe.  [Doc. No. 73.]  Neither party has filed an Opposition to the R&R.  For the

13  reasons set forth below, the Court (1) **ADOPTS** the R&R; (2) **GRANTS** Defendants' Motion

14  for Summary Judgment as to count 1 with regard to Officer Savala, as to count 2 with regard to

15  MTA Leal, and as to count 5 with regard to Officer Gervin, Sergeant Cabrera, S. Valenzuela,

16  Lieutenant Mettler, and Associate Warden Salazar; and (3) **DENIES** Defendants' Motion for

17  Summary Judgment as to count 1 with regard to Officer Bach and as to count 2 with regard to

18  Officer LaCombe.

19

20                                    *Background*

21  **I.  Plaintiff's Allegations**

22          Plaintiff alleges that on July 25, 2003, during the early breakfast for education and

23  vocational students in Facility C at Centinela, an incident occurred in which Correctional Officer

24  Flores was attacked and injured by an inmate.  (Compl. at 8.)  Plaintiff claims that as he and

25  other inmates were exiting the dining hall, Officer Gomez stopped Plaintiff and escorted Plaintiff

26  back into the dining hall.  After another officer identified Plaintiff, Officer Gomez brought

27  Plaintiff to Officer Savala and explained, "He's the one who hit Flores."  *Id.*  Plaintiff claims that

28  Sergeant Savala ordered Plaintiff to face the wall and then "slammed [Plaintiff] into the wall"

while "pretending" to perform a search and saying, "Oh yeah!"  *Id.*  Plaintiff was then

handcuffed, and Officer Gomez escorted Plaintiff to the medical clinic and placed him in a

holding cell.  (Compl. at 8.)  At the clinic, Officer Gomez told the other officers that the Plaintiff

had "sucker punched" Officer Flores.  *Id.*

Plaintiff alleges that soon thereafter, Officers Bach and LaCombe entered the clinic and

verbally threatened Plaintiff.  (Compl. at 9.)  Plaintiff states that he witnessed Officer Bach and

other officers verbally threaten an inmate in another holding cell, take the inmate out of the

holding cell, and physically assault that inmate.  *Id.*  Plaintiff claims that after this incident,

Officer Bach further threatened Plaintiff, saying, "You're next mother fucker," "I'm going to

fucken [sic] kill you," and "I'm going to break every bone in your body."  *Id.*  Plaintiff claims

that he attempted to report the threat and the assaults on the other inmate to another officer in the

area, but Officer Bach hit the bars of Plaintiff's cell several times and said, "Shut the fuck up"

and reached into the cell and grabbed Plaintiff, ripping Plaintiff's jumpsuit.  (Compl. at 9-10.)

Plaintiff states that Officers Bach and LaCombe left, and Medical Technical Assistant

(MTA) Leal entered to examine the Plaintiff.  (Compl. at 10.)  Plaintiff states that he told MTA

Leal about the preceding events and asked MTA Leal not to leave him alone.  The Plaintiff

contends that MTA Leal responded by saying, "They're not going to do anything."  *Id.*

Officers Bach and LaCombe returned while MTA Leal was conducting the examination.

The Plaintiff contends that after MTA Leal left, Officer Bach beat him while Officer LaCombe

watched.  *Id.*  Plaintiff claims that while he was handcuffed, he was punched in the stomach and

then again in the back of the shoulder by Officer Bach, before falling to the ground in the fetal

position.  *Id.*  Officer Bach verbally challenged the Plaintiff to stand up and "fight like a man."

*Id.*  Plaintiff stayed down and called to MTA Leal.  *Id.*  Plaintiff contends that Defendant Bach

said, "Shut the fuck up," punched the Plaintiff's left arm and kicked him in the left upper chest

area.  *Id.*

When MTA Leal returned to complete the examination, Officer Bach placed Plaintiff in

leg restraints.  (Compl. at 11.)  After MTA Leal finished the examination and left the room,

Plaintiff told Officer Bach that he intended to file a complaint against Officer Bach, to which

1  Officer Bach replied he intended to write the Plaintiff up and indicate in the report that Plaintiff
2  was "all doped up and instigated the whole shit." *Id.*  Officers Bach and LaCombe left, and
3  MTA Leal again returned to the clinic.  When Plaintiff told MTA Leal about what had just
4  happened, MTA Leal responded, "It's because an officer was assaulted." *Id.*

5       Plaintiff later reported these incidents and showed the bruises he allegedly received as a
6  result of these incidents to several prison personnel, all of whom refused to document them.
7  (Compl. at 11.) Plaintiff was transported from the clinic to the Administrative Segregation Unit
8  (ASU).  When Plaintiff asked Sergeant Valenzuela why he had been placed in ASU, Sergeant
9  Valenzuela told Plaintiff it was because of Plaintiff's involvement in the incident in the dining
10  hall and the assault on Officer Flores.

11       Plaintiff further alleges that between July 25, 2003 and August 29, 2003, he was denied
12  allowable personal hygiene products.  (Compl. at 24-27.)  Specifically, Plaintiff claims that he
13  was denied shower shoes, shampoo, deodorant, soap, body lotion, toothpaste, toothbrush, and
14  prescription glasses during a period of thirty-five days while he was in administrative segrega-
15  tion. *Id.*

16

17  **II.  Plaintiff's Claims**

18       Plaintiff's claims which survived Defendants' Motion to Dismiss are count 1 as to
19  Officers Savala and Bach, count 2 as to Officer LaCombe and MTA Leal, and count 5 as to
20  Officer Gervin, Sergeant Cabrera, S. Valenzuela, Lieutenant Mettler, and Associate Warden
21  Salazar.  Plaintiff claims in count 1 that Officers Savala and Bach used excessive force against
22  Plaintiff in violation of the Eighth Amendment.  (Compl. at 12.)  In count 2, Plaintiff claims that
23  Officer LaCombe and MTA Leal failed to protect Plaintiff from the alleged excessive force.
24  (Compl. at 17.)  Plaintiff alleges in count 5 that Officer Gervin, Sergeant Cabrera, S. Valenzuela,
25  Lieutenant Mettler, and Associate Warden Salazar violated his Eighth Amendment rights when
26  they deprived him of personal hygiene products while he was in administrative segregation.
27  (Compl. at 24-27.)

28

*Legal Standard*

**I.  Summary Judgment Standard**

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure on "all or any part" of a claim where there is an absence of a genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56 (2006); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  *See id.* at 323-24.  A fact is material when, under the governing substantive law, the fact might affect the outcome of the case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).  A dispute about a material fact is genuine if  "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  When making its determination, the Court must view all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion.  *See Matsushita Elec. Indus. Co. Ltd.  v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact.  *See Celotex*, 477 U.S. at 323.  The moving party can satisfy this burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial.  *See id.* at 322-23.  If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence.  *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party meets the initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.  Thus, "[t]he mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient." *Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) (citing *Anderson*, 477 U.S. at 252); *see also Matsushita*, 475 U.S. at 586 (if the moving party meets this initial burden, the nonmoving party cannot defeat summary judgment by merely

1   demonstrating "that there is some metaphysical doubt as to the material facts"). Moreover, it is

2   insufficient for the party opposing summary judgment to "rest upon the mere allegations or

3   denials of [his or her] pleading." FED. R. CIV. P. 56(e). Rather, the party opposing summary

4   judgment must "by [his or her] own affidavits, or by the 'depositions, answers to interrogatories,

5   and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' "

6   *Celotex*, 477 U.S. at 324 (quoting FED. R. CIV. P. 56(e)).

7        Furthermore, a court is not obligated "to scour the records in search of a genuine issue of

8   triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing *Richards v. Combined*

9   *Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)). "[T]he district court may limit its review to the

10  documents submitted for purposes of summary judgment and those parts of the record specifi-

11  cally referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th

12  Cir. 2001).

13  **II.  Reviewing a Magistrate Judge's R&R**

14       In deciding a Motion for Summary Judgement in connection with a magistrate judge's

15  R&R, a district court must "make *de novo* determination of those portions of the report . . . to

16  which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or

17  recommendations made by the magistrate." 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b) (2006);

18  *see also United States v. Raddatz*, 447 U.S. 667, 676 (1980) ("[I]n providing for a '*de novo*'

19  hearing, Congress intended to permit whatever reliance a district judge, in exercise of sound

20  discretion, chose to place on a magistrate's proposed findings and recommendations.")

21       When no objections are filed to the R&R, as is the case here, the district court may

22  assume the correctness of the magistrate judge's findings of fact and decide the motion based on

23  the applicable law. *See Campbell v. U.S. Dist. Court*, 501 F.2d 196, 206 (9th Cir. 1974). The

24  U.S. Court of Appeals for the Ninth Circuit has held that, under such circumstances, "a failure to

25  file objections only relieves the trial court of its burden to give *de novo* review to factual

26  findings; conclusions of law must still be reviewed *de novo*." *Barilla v. Ervin*, 886 F.2d 1514,

27  1518 (9th Cir. 1989) (citing *Britt v. Simi Valley Unified Sch. Dist.*, 708 F.2d 452, 454 (9th Cir.

28

1983)), *overruled on other grounds by Simpson v. Lear Astronics Corp.*, 77 F.3d 1170, 1174 (9th Cir. 1996).

### *Discussion*

Defendants move this Court for summary judgment under Rule 56 of the Federal Rules of Civil Procedure on counts 1, 2, and 5 arguing that: 1) Plaintiff's injuries were *de minimis* and are insufficient to establish a cognizable Eighth Amendment claim; 2) Defendants Leal and LaCombe did not act with deliberate indifference to Plaintiff's safety; 3) Defendants did not unconstitutionally deprive Plaintiff of hygiene items in administrative segregation; and 4) Defendants are entitled to qualified immunity, as they reasonably believed their actions were lawful.

### I.  Plaintiff's Excessive Force Claims Under the Eighth Amendment

Plaintiff claims in count 1 that Officers Savala and Bach used excessive force against Plaintiff in violation of the Eighth Amendment.  (Compl. at 12.)  Specifically, Plaintiff claims that Officer Savala ordered Plaintiff to face the wall and then "slammed [Plaintiff] into the wall" while pretending to perform a search and saying, "Oh yeah!"  (Compl. at 8.)  With regard to Defendant Bach, Plaintiff alleges that while he was handcuffed in a holding cell in the medical clinic, Officer Bach punched him in the stomach, the back of his shoulder, and his left arm, and kicked him in the upper chest area.  (Compl. at 10.)

In *Hudson v. McMillian*, the Supreme Court held that the "settled rule [is] that 'the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" 503 U.S. 1, 5 (1992) (citing *Whitley v. Albers*, 475 U.S. 213, 319 (1986)).  In order to make out an excessive force claim under the Eighth Amendment, an inmate must satisfy both an objective and a subjective prong; a court will thus consider whether "the officials acted with a sufficiently culpable state of mind and if the alleged wrong-doing was objectively harmful enough to establish a constitutional violation."  *Id.* at 8 (citations omitted).  In *Hudson*, the Supreme Court found that the objective prong may be satisfied even if significant injury does not result.  *Id.* at 9.  However, the protection of the Eighth Amendment

does not extend to *de minimis* uses of physical force, unless the type of force used is "repugnant to the conscience of mankind." *Id.* at 9-10.

### A. Officer Savala

With respect to Officer Savala's conduct toward Plaintiff, this Court agrees with the Magistrate Judge that "the physical force employed by Officer Savala was *de minimis* and not objectively 'harmful enough' to establish a constitutional violation." (R&R at 7.) Plaintiff admitted that he did not sustain any injuries from Officer Savala's alleged use of force. (*See* Exh. A to Coleman Decl., Plaintiff's Deposition at 19:20 to 20:13.) Furthermore, the Court finds that Plaintiff has failed to demonstrate that Officer Savala acted with a "sufficiently culpable state of mind" since Officer Savala's use of force was minimal and immediately followed another officer's identification of Plaintiff as a participant in the assault on Officer Flores. *See Hudson*, 503 U.S. at 8. The Court thus finds that Plaintiff has failed to meet his burden with regard to both the objective and subjective prongs set forth in *Hudson*. As such, the Court **ADOPTS** the R&R's recommendation and **GRANTS** Defendants' Motion for Summary Judgment as to count 1 with regard to Defendant Savala.

### B. Officer Bach

With regard to the physical force used by Officer Bach, as alleged by Plaintiff and not disputed by Defendants, the Court finds that Officer Bach's use of force amounts to a violation of the Eighth Amendment's prohibition against excessive force. Officer Bach punched and kicked Plaintiff numerous times while he was handcuffed in a holding cell. Although this conduct did not result in lasting injuries and may be termed *de minimis* (*see* R&R at 6), this use of force would nonetheless qualify as repugnant to the conscience of mankind. Plaintiff had been handcuffed and removed to a medical holding cell, and there is no evidence that Plaintiff presented a threat to Officer Bach. (R&R at 8.) This conduct satisfies both the objective and subjective prongs of *Hudson*, since beating a restrained inmate without provocation is repugnant and evidences a "sufficiently culpable state of mind." As such, the Court finds that the Defendants have failed to meet their burden under Rule 56 and therefore **ADOPTS** the R&R's

04cv2013-J (AJB)

1  recommendation and **DENIES** Defendants' Motion for Summary Judgment as to count 1 with

2  regard to Defendant Bach.

3  **II.  Plaintiff's Failure to Protect Claims Against Defendants Leal and LaCombe**

4       Plaintiff claims in count 2 that Defendants LaCombe and Leal failed to protect him from

5  excessive force in violation of the Eighth Amendment.  Specifically, Plaintiff claims that MTA

6  Leal failed to protect him from Officer Bach, although Plaintiff informed her that Officer Bach

7  had verbally and physically threatened him and requested that she not leave Plaintiff alone with

8  Officer Bach.  Plaintiff also claims that Officer LaCombe was present while Officer Bach beat

9  Plaintiff. (*See* R&R at 10.)

10      Under the Eighth Amendment, prison officials have a duty to "provide humane conditions

11  of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  However, "a prison official

12  cannot be found liable under the Eighth Amendment for denying an inmate humane conditions

13  of confinement unless the official knows of and disregards an excessive risk to inmate health or

14  safety; the official must both be aware of facts from which the inference could be drawn that a

15  substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.  In other

16  words, this "deliberate indifference" test requires that the prisoner show that "the official knew

17  of the risk and that the official inferred that substantial harm might result from the risk." *Wallis*

18  *v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995).  In *Farmer*, the Supreme Court held that courts

19  may use the standard of "subjective recklessness" to determine whether a prison official acted

20  with "deliberate indifference" under the Eighth Amendment.  511 U.S. at 839-40.

21      *A. MTA Leal*

22      In order to demonstrate that MTA Leal acted with deliberate indifference in violation of

23  Plaintiff's rights under the Eighth Amendment, Plaintiff must show that MTA Leal knew that

24  Officer Bach posed a serious threat of substantial harm to Plaintiff and that MTA Leal either

25  recklessly or deliberately disregarded this risk to Plaintiff's safety.

26      Plaintiff admitted during his deposition that MTA Leal did not witness Officer Bach's use

27  of excessive force because she was not present during the incident.  (*See* Exh. A to Coleman

28  Decl., Plaintiff's Deposition at 37:25 to 38:3.)  The Magistrate Judge found that MTA Leal did

1  not witness anything either before or after the alleged beating by Officer Bach that would
2  support Plaintiff's contention that MTA Leal knew or should have known that Plaintiff would
3  suffer substantial harm when she momentarily left Plaintiff with Officers Bach and LaCombe
4  before returning to complete her examination of Plaintiff.  (R&R at 11.)  The Court adopts this
5  finding and further finds that Plaintiff has failed to demonstrate that MTA Leal was recklessly or
6  deliberately indifferent to the substantial risk of harm Plaintiff contends Officer Bach posed to
7  his safety because: 1) MTA Leal's failure to perceive the risk was reasonable, and 2) MTA Leal
8  did not leave Plaintiff alone with Officer Bach.  Based on the foregoing, this Court **ADOPTS** the
9  R&R's recommendation and **GRANTS** Defendants' Motion for Summary Judgment as to count
10  2 with regard to Defendant Leal.

11      ### B. Officer LaCombe

12      In order to prevail on his failure to protect claim against Officer LaCombe, Plaintiff must
13  show that Officer LaCombe knew that Officer Bach posed a serious threat of substantial harm to
14  Plaintiff and Officer LaCombe recklessly or deliberately disregarded this risk to Plaintiff's
15  safety.  Unlike MTA Leal, Plaintiff's allegations demonstrate that Officer LaCombe knew or
16  should have known that Officer Bach posed a substantial risk to Plaintiff's safety.  The record
17  indicates that Officer LaCombe was present during Officer Bach's use of force against Plaintiff
18  in the holding cell while Plaintiff was handcuffed.  (Compl. at 10.)  Plaintiff contends that
19  Officer LaCombe failed to act to stop Officer Bach, and Officer LaCombe does not dispute this
20  contention, but instead states only that he did not witness the use of unnecessary or excessive
21  force by anyone.  Furthermore, Officer LaCombe knew or should have known of Plaintiff's
22  particular vulnerability because Plaintiff was handcuffed and there is no indication from the
23  record that Plaintiff provoked the use of force by Officer Bach.

24      Given the undisputed facts as set forth by both Defendants and Plaintiff, and viewing
25  them in the light most favorable to Plaintiff, this Court finds that Plaintiff has sufficiently
26  established that Officer LaCombe was "recklessly" or "deliberately" indifferent to the serious
27  risk to Plaintiff posed by Officer Bach.  Based upon the foregoing, the Court finds that Defen-
28  dants have failed to meet their burden under Rule 56, and therefore **ADOPTS** the R&R's

1  recommendation and **DENIES** Defendants' Motion for Summary Judgment as to count 1 with

2  regard to Defendant LaCombe.

3  **III.  Plaintiff's Eighth Amendment Claims of Deprivation of Personal Hygiene Products**

4         Plaintiff claims in count 5 that Officer Gervin, Sergeant Cabrera, S. Valenzuela, Lieuten-

5  ant Mettler, and Associate Warden Salazar violated his Eighth Amendment rights when they

6  deprived him of personal hygiene products while he was in administrative segregation for a

7  period of thirty-five days in July and August 2003.  (Compl. at 24-27.)  To establish a "condi-

8  tions of confinement" claim under the Eighth Amendment, a prisoner must demonstrate that the

9  prison official deprived the prisoner of the "minimal civilized measure of life's necessities" and

10  that the prison official acted with deliberate indifference in doing so.  *Toguchi v. Chung*, 391

11  F.3d 1051, 1057 (9th Cir. 2004).

12        An alleged denial of adequate hygiene over an extended period of time can amount to a

13  claim under the Eighth Amendment.  *See, e.g., Bradley v. Puckett*, 157 F.3d 1022, 1026 (5th Cir.

14  1998) (denial of disabled prisoner proper facilities to shower for over two months stated claim

15  for cruel and unusual punishment); *Clayton v. Morris*, No. 90 C 2718, 1994 WL 118186, *6

16  (N.D. Ill. Mar. 28, 1994) ("The denial of shower privileges over a prolonged period of time may

17  be actionable if the inmate can allege a specific physical harm that results."), *aff'd*, 70 F.3d 1274

18  (7th Cir. 1995).  However, when prisoners are merely inconvenienced or suffer *de minimis*

19  injuries that do not rise to the level of cruel and unusual punishment, the federal courts should

20  not interfere in the day to day operations of the prison.  *See, e.g., Hudson v. McMillian*, 503 U.S.

21  1, 9-10 (1992) (Eighth Amendment excludes from constitutional recognition *de minimis* uses of

22  force); *Anderson v. County of Kern*, 45 F.3d 1310, 1314-15 (9th Cir. 1995) (temporary place-

23  ment in safety cell that was dirty and smelled bad did not constitute infliction of pain); *Holloway

24  v. Gunnell*, 685 F.2d 150 (5th Cir. 1985) (no claim stated where prisoner was forced to spend

25  two days in a hot dirty cell with no water); *Miles v. Konvalenka*, 791 F.Supp. 212 (N.D.Ill. 1992)

26  (single instance of finding mouse in food not actionable); *Evans v. Fogg*, 466 F.Supp. 949

27  (S.D.N.Y. 1979) (no claim stated by prisoner confined for twenty-four hours in refuse-strewn

28  cell and for two days in flooded cell).  Federal courts instead should avoid enmeshing them-

1   selves in the minutiae of prison operations in the name of the Eighth Amendment.  *See Wright v.*

2   *Rushen*, 642 F.2d 1129, 1132 (9th Cir. 1981).

3         Plaintiff alleges that Officer Gervin, Sergeant Cabrera, S. Valenzuela, Lieutenant Mettler,

4   and Associate Warden Salazar deprived him of shower shoes, shampoo, deodorant, soap, body

5   lotion, toothpaste, toothbrush, and prescription glasses from July 25, 2003 to August 29, 2003.

6   (Compl. at 24-27.)[1]  When Plaintiff was placed in ASU, he was issued clothing and linen,

7   hygiene items including soap, toilet paper, tooth powder, and a toothbrush.  (Branham Decl. ¶¶

8   10-14.)  Plaintiff acknowledged that he received one 2.5-ounce bar of soap per week.  (*See* Exh.

9   A to Coleman Decl., Plaintiff's Deposition at 48:20-24.)  Plaintiff showered every other day and

10  took "bird baths" in his cell using the water in his sink.  *Id.* at 49:9-15.  After Plaintiff was

11  classified, he was allowed to buy items through the prison canteen.  (Branham Decl. ¶ 16.)

12  Plaintiff received his allowable personal property items on August 29, 2003, less than a month

13  after being classified.  (Mettler Decl. ¶ 7.)

14        Because the Constitution requires a prison to provide a prisoner only with "adequate"

15  hygiene, Defendants did not violate Plaintiff's Eighth Amendment rights with regard to personal

16  hygiene.  *See Rhodes v. Chapman*, 452 U.S. 337, 349 (1981) ("The Constitution does not

17  mandate comfortable prisons."); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982) ("[The

18  Eighth Amendment] requires neither that prisons be comfortable not that they provide every

19  amenity that one might find desirable.").   Plaintiff presents no evidence that his conditions were

20  "generally unsanitary" and therefore, the facts as alleged do not support an Eighth Amendment

21  claim.  *See Novak v. Beto*, 453 F.2d 661 (5th Cir. 1971), *cert. denied*, 409 U.S. 968 (1972)

22  (holding that conditions in which inmates could only bathe three times per week, and where

23  inmates received toilet paper, toothbrush, and toothpaste were not so unsanitary as to rise to the

24  level of an Eighth Amendment violation).  As such, the Court **ADOPTS** the R&R's recommen-

25

26       [1]Defendants note that Plaintiff's claimed deprivation of personal hygiene items changed several times as Plaintiff later narrowed his list to shower shoes, shampoo, deodorant, soap, and toothpaste, and

27  eventually Plaintiff also admitted that he received one-half bar of soap per week.  (*See* Exh. A to Coleman Decl., Plaintiff's Deposition at 48:20-24.)  When Plaintiff was asked at his deposition which

28  personal hygiene items he lacked during his placement in the Administrative Segregation Unit from July 25, 2003 until August 29, 2003, he stated he did not have shampoo or deodorant.  (*See id.* at 49:22-50:23.)

1  dation and **GRANTS** Defendants' Motion for Summary Judgment as to count 5 with regard to
2  Defendants Gervin, Cabrera, Valenzuela, Mettler, and Salazar.

3  **IV.  Qualified Immunity on Summary Judgment**

4        Defendants argue that Officers Bach and LaCombe are entitled to qualified immunity
5  with respect to Plaintiff's claims, because they reasonably believed that their actions were
6  lawful.  (*See* Defs.' Motion for Summ. J. at 2.)  Government officials enjoy qualified immunity
7  from civil damages unless their conduct violates "clearly established statutory or constitutional
8  rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800,
9  818 (1982).  In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken
10 in the light most favorable to the party asserting the injury, the facts alleged show the defen-
11 dant's conduct violated a constitutional right.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If, and
12 only if, a violation can be made out, the next step is to ask whether the right was clearly
13 established.  *Id.*  In resolving these issues, the court must view the evidence in the light most
14 favorable to the plaintiff and resolve all material factual disputes in favor of plaintiff.  *Martinez*
15 *v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003).

16       The first prong of the qualified immunity inquiry is not at issue here.  As set forth above,
17 Plaintiff's allegations, if true, are sufficient to show that the conduct of Defendants Bach and
18 LaCombe violated Plaintiff's constitutional rights under the Eighth Amendment.  As such, the
19 first prong of the inquiry set forth in *Saucier* has been met.

20       As to the second prong, this Court must consider whether the constitutional right was
21 "clearly established."  *Saucier*, 533 U.S. at 201.  A particularized inquiry must be made,
22 "undertaken in light of the specific context of the case, not as a broad general proposition."  *Id.*
23 To determine whether the right was clearly established, the Court must determine whether "it
24 would be clear to a reasonable officer that his conduct was unlawful in the situation he con-
25 fronted."  *Id.* at 201-02; *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001).  "If the law
26 did not put the officer on notice that his conduct would be clearly unlawful, summary judgment
27 based on qualified immunity is appropriate."  *Saucier*, 533 U.S. at 202.  This is true even if the
28 defendants did violate the plaintiff's Eighth Amendment rights.  "Conversely, where 'various

1  courts have agreed that certain conduct is a constitutional violation under facts not distinguish-

2  able in a fair way from the facts presented in the case at hand,' the officers would not be entitled

3  to qualified immunity." *Id.* (citations omitted).

4        The Supreme Court has held that for purposes of qualified immunity, officials can still be

5  on notice that their conduct violates established law even in novel factual circumstances, as

6  notice does not require that facts of previous cases be materially or fundamentally similar to the

7  situation in question. *Hope v. Pelzer*, 536 U.S. 730, 741 (U.S. 2002). In fact, the Court

8  expressly rejected a requirement that previous cases be "fundamentally similar" and found that

9  "cases with materially similar facts" are not necessary to find that "the law is clearly estab-

10  lished." *Id.* (citations omitted). That same year, the Ninth Circuit stated that "neither *Farmer*

11  nor subsequent authorities has fleshed out 'at what point a risk of inmate assault becomes

12  sufficiently substantial for Eighth Amendment purposes.'" *Estate of Ford v. Ramirez-Palmer*,

13  301 F.3d 1043, 1051 (9th Cir. 2002).

14        ***A. Officer Bach***

15        As discussed above, Plaintiff has raised a question of triable fact as to whether Officer

16  Bach's alleged use of force against Plaintiff violated Plaintiff's rights under the Eighth Amend-

17  ment. Therefore, Plaintiff has satisfied the first prong of the test laid out in *Saucier* for qualified

18  immunity; the facts alleged show that the officer's conduct violated a constitutional right. 533

19  U.S. at 201. The Court must now consider the second prong of the test, whether the right was

20  clearly established. *Id.* Given the circumstances surrounding Officer Bach's use of force as set

21  forth above, this Court cannot find that Officer Bach reasonably or mistakenly believed he was

22  justified in his use of force on Plaintiff. Officer Bach does not dispute that his use of force

23  occurred well after the initial assault on Officer Flores and while Plaintiff was restrained and

24  confined in a medical holding cell. As such, the Court **FINDS** that Officer Bach is not entitled

25  to qualified immunity with regard to Plaintiff's excessive force claims set forth in count 1.

26        ***B. Officer LaCombe***

27        As discussed above, Plaintiff has produced enough evidence to create a question of

28  material fact as to whether a constitutional violation occurred when Officer LaCombe failed to

04cv2013-J (AJB)

protect Plaintiff from the use of excessive force by Officer Bach.  As such, the Court must now consider whether the constitutional right was "clearly established."  *Saucier*, 533 U.S. at 201. An inmate's right to be protected from assault was clearly announced in *Farmer v. Brennan*, 511 U.S. 825 (1994), if not before.  That case clearly established that, if an officer knows of an excessive risk to an inmate's safety and infers from the facts of which he was aware that a substantial risk of harm exists, he would violate the Eighth Amendment by disregarding it or not reasonably responding to it.  *Farmer*, 511 U.S. at 834.  There is no dispute regarding Officer Bach's use of force or Officer LaCombe's presence at the time.  Viewing the facts in the light most favorable to Plaintiff, the Court **FINDS** that a reasonable officer in Officer LaCombe's shoes, knowing what he knew, could not have mistakenly but reasonably perceived that watching Officer Bach punch and kick the Plaintiff while he was handcuffed was not unlawful. As such, the Court **FINDS** that Defendants' assertion that Officer Bach is entitled to qualified immunity with regard to Plaintiff's failure to protect claims set forth in count 2 are without merit.

### Conclusion

In conclusion, the Court (1) **ADOPTS** the R&R; (2) **GRANTS** Defendants' Motion for Summary Judgment as to count 1 with regard to Officer Savala, as to count 2 with regard to MTA Leal, and as to count 5 with regard to Officer Gervin, Sergeant Cabrera, S. Valenzuela, Lieutenant Mettler, and Associate Warden Salazar; and (3) **DENIES** Defendants' Motion for Summary Judgment as to count 1 with regard to Officer Bach and as to count 2 with regard to Officer LaCombe.

**IT IS SO ORDERED.**

DATED:   September 29, 2008

_____
HON. NAPOLEON A. JONES, JR.
United States District Judge

cc: Magistrate Judge Anthony J. Battaglia
      All Parties